UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JOSEPH OLIVERA, an individual, and JACQUELINE JULTY, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN HOME MORTGAGE SERVICING, INC., a Delaware Corporation; AMERICAN BROKERS CONDUIT, a Delaware Limited Liability Company; CAL COAST FINANCIAL CORPORATION; a California Corporation, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No: C 09-3616 SBA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AMERICAN HOME MORTGAGE SERVICING, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Docket 6 |

Plaintiffs, Joseph Olivera and Jacqueline Julty, allege that various defendants, including American Home Mortgage Servicing, Inc. (AHMSI), violated the Truth in Lending Act (TILA) and California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 et seq., in connection with the refinancing of their home. The parties are presently before the Court on AHMSI's Motion to Dismiss Complaint for Failure to State a Claim Upon Which Relief Can be Granted or In the Alternative, for a More Definite Statement. (Docket 6.) Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion IN PART and DENIES it IN PART. AHMSI's alternative motion for a more definite statement is DENIED as moot. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b).

## I. BACKGROUND

### A. FACTUAL SUMMARY

The following facts are based on the allegations in the Complaint, which are presumed true for purposes of this motion. On an unspecified date, Plaintiffs received an unsolicited telephone call from a broker at Defendant Cal Coast Financial Corporation (Cal Coast), who attempted to convince them to refinance the mortgage on their home in Newark, California. (Compl. ¶ 12.) After a number of calls, Plaintiffs agreed to meet with the broker. (Id.) At their first meeting, the broker suggested that Plaintiffs apply for a POWER ARM Option Adjustable Rate Mortgage, which would allow them the flexibility of selecting the amount of their monthly mortgage payment. (Id.) The broker also represented that the maximum amount their monthly payment could be increased was only $50 per year. (Id.) However, the broker failed to warn Plaintiffs that the loan was a negative amortization loan; that is, a loan whose principle increases instead of decreases as in the case of a regular mortgage. (Id.)

On August 8, 2006, Plaintiffs obtained a POWER ARM loan, a closed-end consumer credit transaction. (Id. ¶ 10.) Under the terms of the loan, Plaintiffs borrowed $295,000 at an initial "teaser" interest rate of 1% per annum. (Id. ¶ 11.) This initial rate lasted only for three weeks, after which it increased to 7.63%. (Id.) The 7.63% rate remained in effect for only one month, after which time the rate increased "by adding 3.3% to the current index which . . . adjust[ed] every single month thereafter." (Id.) Although the interest rate continually increased, the monthly mortgage payment was based on the 1% teaser rate, and the unpaid interest is added to the principal of the loan, thus resulting in negative amortization. (Id. ¶¶ 11, 14.)

Defendant American Brokers Conduit (ABC) originated the loan, allegedly with full knowledge that the loan documents did not comply with the TILA. (Id. ¶ 15.) Subsequently, Defendant AHMSI purchased and serviced the loan, also "fully aware" that the loan did not comply with the TILA. (Id.) On August 4, 2009, Plaintiffs, through their counsel, notified AHMSI in writing that they were rescinding the loan. (Id. ¶ 16.)

**B.    PROCEDURAL HISTORY**

Plaintiffs filed the instant action in this Court on August 7, 2009, against AHMSI, ABC and Cal Coast.[1]  In their Complaint, Plaintiffs allege two claims for relief for:  (1) rescission pursuant to the TILA and Regulation Z, 12 C.F.R. § 226; and (2) violation of the UCL.  Defendants allegedly violated these statutes by providing Plaintiffs with a "blank" Notice of Right to Cancel and by failing to disclose in their Truth in Lending Disclosure Statement ("Disclosure Statement") that the loan would negatively amortize.  Plaintiffs seek rescission of the loan, injunctive relief and recovery of their attorneys' fees.

AHMSI has now filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), or alternatively, a motion for a more definite statement under Rule 12(f).  AHMSI's motion is supported by request for judicial notice and a declaration of counsel, both of which are accompanied by various documents allegedly relating to ownership of AHMSI as well as the transaction at issue.[2]  Plaintiffs have filed oppositions to AHMSI's motion to dismiss and its request for judicial notice.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes a district court, upon motion of a party, to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"  To survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "Specific facts are not necessary; the statement need only give the defendant[s] fair notice of what ... the claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (internal quotation marks omitted); Johnson v. Riverside Healthcare System, LP, 534 F.3d 1116, 1122 (9th Cir. 2008).  The plaintiff must establish that

---

[1] ABC and Cal Coast have not appeared in the action, and their status as parties in this action is unclear.

[2] All of the case and record citations in AHMSI's brief are set forth in footnotes.  In the future, Defendant AHMSI shall refrain from this practice and shall instead cite any legal authorities and record citations in the body of the memorandum.  Counsel for AHMSI is referred to the The Bluebook for further guidance on this issue.

the allegations are sufficient to push the asserted claim "across the line from conceivable to plausible[.]" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1951 (2009) (quoting Twombly, 550 U.S. at 557).

On a Rule 12(b)(6) motion, the facts alleged in the pleadings are accepted as true and the Court must "draw inferences in the light most favorable to the plaintiff." Barker v. Riverside County Office of Educ., 584 F.3d 821, 824 (9th Cir. 2009). The Court's inquiry generally is limited to the allegations in the complaint. Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). In the event dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

## III. DISCUSSION

### A. TILA

"Congress enacted TILA 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.'" Hauk v. JP Morgan Chase Bank USA, 552 F.3d 1114, 1118 (9th Cir. 2009) (quoting 15 U.S.C. § 1601). To promote the purposes of TILA, its provisions must be "liberally" construed in favor of the consumer, and compliance by creditors must be "absolute." Id. Congress delegated the responsibility of developing regulations to carry out the purposes of TILA to the Federal Reserve Board ("Board"). 15 U.S.C. § 1604(a). In response, the Board promulgated "Regulation Z," 12 C.F.R. § 226, and published its interpretation of Regulation Z in the "Official Staff Interpretation," 12 C.F.R. pt. 226 Supp. I. McCoy v. Chase Manhattan Bank, USA, 559 F.3d 963, 969 n.5 (9th Cir. 2009). Courts must defer to the Board's interpretation of TILA unless that interpretation is obviously contrary to the statute. Hauk, 552 F.3d at 1118.

Under TILA, a borrower has two remedies for a loan disclosure violation: civil damages and rescission. 15 U.S.C. §§ 1640, 1635. With regard to rescission, TILA provides that borrowers have until midnight of the third business day following the consummation of a loan transaction to rescind the transaction. 15 U.S.C. § 1635(a). A borrower's right of rescission is extended from three days to three years if the lender (1) fails to provide notice of the borrower's right of rescission or (2) fails to make a material disclosure. See Miguel v. Country Funding Corp., 309 F.3d 1161, 1163 (9th Cir. 2002) (citing 15 U.S.C. § 1635(f) and 12 C.F.R. § 226.23(a)(3)). Here, Plaintiffs seek rescission, but not damages, based on Defendants' alleged failure to a proper Notice of Right to Cancel and failure disclose the fact that the loan would negatively amortize. (E.g., Compl. ¶ 13-14: § IV (Prayer for Relief).[3]

### 1. Assignee/Servicer Liability

As a general rule, liability under TILA applies to creditors and their assignees. See 15 U.S.C. §§ 1640, 1641. Loan servicers cannot be held liable under TILA unless they owned the loan obligation at some point in time. 15 U.S.C. § 1641(f)(1) ("A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section *unless* the servicer is or was the owner of the obligation.") (emphasis added); Mulato v. WMC Mortg. Corp., 2009 WL 3561536 *6 (N.D. Cal., Oct. 27, 2009) ("As a loan servicer that has not been alleged to own Plaintiff's mortgage notes, Chase cannot be held liable for TILA violations.").

AHMSI contends that it cannot be held liable under TILA because it was merely a servicer, and not a creditor or assignee of a creditor. (Mot. at 4.)[4] Although the Complaint

---

[3] Plaintiffs seek damages based on Defendants' alleged failure to respond to their notice of rescission, but not for the disclosure violations themselves. (Id.)

[4] AHMSI has submitted a Request for Judicial Notice, attached to which are documents from various court proceedings and other public records, which allegedly establish that AHMSI is not related to ABC. While the Court may take judicial notice that these documents were filed, the Court may not consider these documents to establish that ABC and AHMSI have no relation to one another. See M/V American Queen v. San Diego Marine Constr. Corp., 708 F.2d 1483, 1491 (9th Cir. 1983) (a court may take judicial notice of court records, but it may not take judicial notice of the truth of the contents of all documents found therein); Lovelace v. Software Spectrum, Inc., 78 F.3d 1015, 1018 (5th Cir. 1996) (taking judicial notice of an SEC filing "only for the purpose of determining what statements the documents contain, not to

expressly alleges that AHMSI "purchased and serviced Plaintiffs' loan," (Compl. ¶¶ 15, 22), AHMSI argues that such allegation is insufficient because it does not explicitly aver that AHMSI was a "creditor" or "assignee." (Mot. at 4.) This argument elevates form over substance. It can be reasonably inferred that having "purchased" the loan, AHMSI became the "owner of the obligation," as specified under section 1641(f)(1). See al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009) (reasonable inferences to be drawn in favor of plaintiff in connection with a motion to dismiss). Nor is the Court persuaded by AHMSI's contention that Plaintiffs' allegations are untrue. Since the instant motion is brought under Rule 12(b)(6), the Court must presume the truth of the allegations in the Complaint. Challenges to the evidentiary basis of allegations are presented through a motion for summary judgment, not a motion to dismiss.

### 2. Notice of Right to Cancel

AHMSI next challenges Plaintiffs' contention that they were not provided with a proper Notice of Right to Cancel, in violation of TILA. (Mot. at 5-7.) Specifically, AHMSI argues that the blank Notice attached to the Complaint is "fabricated" and that Plaintiffs, in fact, received and signed the requisite forms. (Mot. at 5.) As support, AHMSI proffers what are purported to be four copies of signed Notices, which are attached as exhibits to the declaration of Roger Kistler, an Executive Vice-President at AHMSI. (Kistler Decl. Ex. A.)

As noted, the Court may consider documents that are not attached to the pleadings *if* those documents are referenced therein *and* their authenticity "has not been questioned." No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp., 20 F.3d 920, 925 n.2 (9th Cir. 2003). In this case, however, Plaintiffs takes exception to the authenticity of the documents presented by AHMSI, and dispute that they received the signed Notices now being offered by AHMSI. (Opp'n at 5-6.) As such, the Court cannot, in connection with the instant motion, resolve the question of whether Plaintiffs, in fact, were provided with the Notices as claimed by AHMSI or whether the notice attached to the

prove the truth of the documents' contents"). Accordingly, AHMSI's Request for Judicial Notice is DENIED.

Complaint is fabricated. Therefore, the Court denies AHMSI's motion to dismiss Plaintiffs' claim that Defendants violated TILA by failing to provide a proper Notice of Right to Cancel.

### 3. Negative Amortization Disclosure

The Complaint also alleges Defendants violated TILA by failing to provide a clear statement in the Disclosure Statement or in other loan documents that negative amortization would occur under the terms of Plaintiffs' loan. (Compl. ¶ 14.) According to AHMSI, there is no requirement under TILA or Regulation Z that requires an explanation of negative amortization in the Disclosure Statement itself. (Mot. at 6.) In addition, AHMSI argues that the requisite disclosures regarding negative amortization are sufficiently set forth in the loan papers that Plaintiffs received. (Mot. at 7; Kinstler Decl. Ex. B.)

TILA regulations provide that "[i]f the annual percentage rate may increase after consummation in a transaction secured by the consumer's principal dwelling with a term greater than one year," the lender is required to make certain disclosures at the time an application form is provided or before the consumer pays a non-refundable fee. 12 C.F.R. § 226(19)(b)(2). Among the required disclosures are "any rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment limitations, *negative amortization*, and interest rate carryover." Id. § 226(19)(b)(2)(vii) (emphasis added). Regulation Z requires disclosure of "the annual percentage rate, the finance charge, the amount financed, the total payments, the payment schedule, and the disclosures and limitations referred to in § 226.32(c) and (d)." 12 C.F.R. § 226.23(a)(3) n.48. Neither section 226.19 nor Regulation Z requires that such disclosures be made in the Truth in Lending Disclosure Statement *itself*. See Chetal v. American Home Mortg., 2009 WL 2612312 *3 (N.D. Cal., Aug. 24, 2009).

Based on the foregoing, the Court is persuaded that there is no merit to Plaintiffs' claim that AHMSI violated TILA or Regulation Z by failing to disclose *in the Disclosure Statement* that the loan was subject to negative amortization. However, that is not the sole basis of Plaintiffs' TILA disclosure claim, as Plaintiffs also allege that the requisite disclosures were not made in the other "loan documentation." (Compl. ¶ 14.) With respect to that aspect of

Plaintiffs' TILA claim, AHMSI contends that the proper disclosures were made in loan papers ostensibly received by Plaintiffs. (Mot. at 7; Kistler Decl. Ex. B.) However, it is not clear from the Complaint what particular "loan documentation" Plaintiffs are claiming lacked the disclosures required by TILA. Without such factual foundation, the Court cannot assess whether Plaintiffs have alleged a "plausible" violation of TILA. Consequently, the Court dismisses Plaintiffs' first claim with leave to amend to identify the particular loan documents which they claim violate the disclosure requirements set forth in TILA and Regulation Z.

### 4. Tender

AHMSI next contends that the Court should dismiss Plaintiffs' TILA claim on the ground that they have not adequately alleged facts to satisfy the "tender" requirement. TILA affords borrowers the opportunity to rescind credit transactions under certain circumstances. See 15 U.S.C. § 1635(b); 12 C.F.R. § 226.23. The statute provides that when a borrower provides notice of rescission, the creditor must cancel any security interest and return any money or property (such as earnest money) to the borrower. 15 U.S.C. § 1635(b). Once the creditor has done so, the borrower "shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the [borrower] shall tender its reasonable value." Id.

Consistent with section 1635(b), Plaintiffs allege in their Complaint that they sent AHMSI a notice of rescission, and that once AHMSI "has tendered its proceeds and taken action to reflect that its security interest has been eliminated, Plaintiffs will tender their proceeds (and have the ability to do so) given to them by Defendant [AHMSI] in accordance with applicable statutes and case law." (Compl. ¶ 23.) AHMSI challenges the credibility of Plaintiffs' claim that they have the "ability" to tender the property, and asserts that Plaintiffs should be required by the Court to allege facts demonstrating "their willingness or ability to tender" the requisite amount. (Mot. at 8.) However, AHMSI again ignores on a motion to dismiss, the court is obligated to assume the truth of the factual allegations before it. See Barker, 584 F.3d at 824. The Complaint herein alleges that Plaintiffs will tender their proceeds

and that they "have the ability to do so." (Compl. ¶ 23.) Such allegations, which are accepted as true, are sufficient for pleading purposes.

### B. UCL

The UCL makes actionable any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The scope of the UCL is "quite broad," and a challenged business practice "need only meet one of the three criteria to be considered unfair competition." Morgan v. AT & T Wireless Servs., Inc., 177 Cal.App.4th 1235, 1254 (2009) (internal quotations and citations omitted). To have standing to bring a UCL claim, the plaintiff must have "suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. Where the plaintiff is relying upon the "fraudulent" prong of the UCL, the plaintiff must also plead and prove actual reliance. Morgan, 177 Cal.App.4th at 1257.

AHMSI posits several arguments for dismissal Plaintiffs' UCL claim. First, AHMSI contends that Plaintiffs lack standing to bring a UCL claim because they have not alleged actual reliance. As noted, the UCL governs practices that are (1) unlawful, (2) unfair, or (3) fraudulent. Cal. Bus. & Prof. Code § 17200. To the extent Plaintiffs are relying on the fraudulent prong of the section 17200, Plaintiffs must allege reliance. In re Tobacco II Cases, 46 Cal.4th 298, 328 (2009); Cattie v. Wal-Mart Stores, Inc., 504 F. Supp. 2d 939, 947-49 (S.D. Cal. 2007). For claims based on the "unfair" or "unlawful" prong of the UCL claim, courts have held that the plaintiff need not allege reliance on misrepresentations, and may allege "causation more generally." See In re Ditropan XL Antitrust Litig., 529 F. Supp. 2d 1098, 1007 (N.D. Cal. 2007) (Ware, J.).

It is unclear from the Complaint which prong or prongs of the UCL are at issue. The Complaint alleges that defendants' conduct was "*fraudulent*, deceptive, unfair, and . . . wrongful . . . ." (Compl. ¶ 29 (emphasis added).) In the following paragraph, Plaintiffs omit reference to "fraudulent" conduct, and allege that "Defendants' *unfair* and *unlawful* practices [are] in violation of [the UCL]." (Id. ¶ 30 (emphasis added).) Because the precise basis of Plaintiffs' UCL claim is unclear, the Court will dismiss Plaintiffs' second claim under the UCL

to clarify the legal basis of their UCL claim and to allege facts demonstrating reliance to the extent that Plaintiff amended pleadings purport to rely on Defendants' fraudulent conduct as a basis for their claim.

Second, AHMSI argues that Plaintiffs' UCL claim fails for the same reasons that their TILA claim is infirm. (Mot. at 10.) As set forth above, the Court has rejected AHMSI's motion to dismiss with respect to Plaintiffs' assertion that they were not provided with the requisite Notice of Right to Cancel. However, the Court has granted the motion to dismiss insofar as Plaintiffs' claim is predicated on allegations that Defendants' failed to disclose that the loan would negatively amortize. Thus, the Court's rulings with respect to Plaintiffs' first claim under TILA apply equally to their second claim for violation of the UCL. See Hauk, 552 F.3d at 1122-23 ("Chase's compliance with TILA's disclosure requirements provides a safe harbor with respect to Hauk's UCL claims based only on the sufficiency of Chase's disclosures").

Third, AHMSI argues that Plaintiffs' UCL claim fails because the alleged TILA violations occurred *before* AHMSI became involved with Plaintiffs. (Mot. at 11.) This argument mischaracterizes Plaintiffs' claim. While the Complaint does not allege that AHMSI engaged in misleading conduct in order to induce Plaintiffs to refinance their property, it does allege that AHMSI purchased and serviced the loan "with full knowledge" that the loan was not compliant with TILA. (Compl. ¶¶ 22, 25, 28.) As such, it is inapposite that AHMSI was not directly involved in the origination of the loan.

Finally, citing Mangini v. Aerojet-Gen. Corp., 230 Cal.App.3d 1125, 1155-56 (1991), AHMSI contends that Plaintiffs are relying on *past* conduct as the basis for their UCL claim, and that the statute applies only to *ongoing* conduct. (Mot. at 10-11.) This argument misstates the law. In 1992, the California Legislature amended section 17200 to expand the definition of unfair competition to include "*any* unlawful, unfair, or fraudulent business act or practice." (emphasis added). "Accordingly, under the current version of the statute, even a single act may create liability." United Farm Workers of Am. v. Dutra Farms, 83 Cal.App.4th 1146, 1163

(2000); see also Krzyzanowsky v. Orkin Exterminating Co., Inc., 2009 WL 481267 *13 n.10 (2009) (noting that the UCL now applies to a single act of misconduct) (Armstrong, J.).

In sum, the Court is persuaded that dismissal of Plaintiffs' UCL claim is warranted due to the uncertainty with respect to which prong or prongs of the UCL form the basis of Plaintiffs' second claim for relief. Plaintiff is granted leave to amend to rectify this deficiency and to allege the requisite facts to support such a claim.

### C. MOTION FOR A MORE DEFINITE STATEMENT

Rule 12(e) provides that "[i]f a pleading is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Motions for a more definite statement are "proper only where the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted." Sagan v. Apple Computer, Inc., 874 F. Supp. 1072, 1077 (C.D. Cal. 1994). Here, AHMSI has offered no separate argument in support of their motion for a more definite statement, and instead, merely incorporates by reference their arguments for dismissal. Accordingly, the motion for a more definite statement is denied as moot.

## IV. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. Defendant AHMSI's motion to dismiss is GRANTED IN PART and DENIED IN PART. The motion to dismiss is DENIED as to Plaintiffs' claim under TILA that Defendants failed to provide a proper Notice of Right to Cancel. The motion to dismiss is GRANTED as to Plaintiffs' TILA disclosure claim and UCL claim. Plaintiffs are granted leave to amend to cure the deficiencies discussed above. Plaintiffs shall file a First Amended Complaint within fourteen days of the date this Order is filed. Failure to file an amended complaint in accordance with this Order will result in the dismissal of Plaintiffs' claims, with prejudice.

2. Defendant AHMSI's alternative motion for a definite statement is DENIED AS MOOT.

3. The Case Management Conference currently scheduled for January 26, 2010 is CONTINUED to **February 17, 2010 at 2:45 p.m.**  The parties shall meet and confer prior to the conference and shall prepare a joint Case Management Conference Statement which shall be filed no later than ten (10) days prior to the Case Management Conference that complies with the Standing Order for All Judges of the Northern District of California and the Standing Order of this Court.  Plaintiff shall be responsible for filing the statement as well as for arranging the conference call.  All parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time.

4. This Order terminates Docket No. 6.

IT IS SO ORDERED.

Dated: January 21, 2010

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge